J-A09025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :            PENNSYLVANIA
                                          :

              v.                       :
                                          :
                                          :

CHESTER CARR                        :
                                          :

                 Appellant            :       No. 920 WDA 2023

Appeal from the PCRA Order Entered August 4, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000788-2018

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: May 22, 2024**

Chester Carr appeals from the order denying his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. We affirm.

This Court has previously summarized the pertinent facts and procedural history as follows:

> [Carr's] charges arose on April 27, 2017, when the victim, Olivia Askins ("Askins"), purchased heroin laced with Fentanyl from [Carr] and died from an overdose.  [Carr] supplied the drugs and directed his 16-year-old girlfriend, [J.S.], to deliver the drugs to Askins.  At the time, [Carr] was incarcerated at the Erie County Prison.  However, he used the prison telephone system to dictate to [J.S.] regarding where she could find [Carr's] stash of drugs, prepare the drugs for delivery, contact Askins and deliver the drugs to her.  [J.S.] drove to Askins' house and delivered the drugs per [Carr's] instructions.

*Commonwealth v. Carr*, 227 A.3d 11, 12 (Pa. Super. 2020) (citation omitted).

On August 14, 2018, following a two-day trial, a jury found Carr guilty of conspiracy to commit drug delivery resulting in death (fentanyl) and related charges. On October 1, 2018, the trial court sentenced Carr to an aggregate term of 261 – 522 months incarceration, followed by a one-year probationary term. Carr filed a timely post-sentence motion to modify his sentence which the trial court denied. Carr appealed.

In his direct appeal, Carr raised two issues. First, he challenged whether "criminal conspiracy to commit a drug delivery resulting in death . . . is a legal cognizable crime or a logical impossibility?" *Id.* at 14 (capitalization omitted). Second, Carr challenged the sufficiency of the evidence supporting all of his convictions. This Court found no merit to Carr's first issue. *Id.* at 18. Regarding the second, we found the sufficiency challenge waived because it was raised in only general terms in Carr's Pa.R.A.P. 1925(b) statement, and Carr's attempt to further develop the sufficiency claim in his reply brief was procedurally improper. *Id.* at 18-19. Nonetheless, "[t]o the extent that [Carr] properly preserved for appeal his claim that there was insufficient evidence to support his convictions because he was in prison at the time and could not have been in possession of or deliver the drugs, [Carr] would not be entitled to relief." *Id.* at 19. We explained:

> [O]ur review of the record reflects the evidence at trial was sufficient to establish that, although [Carr] did not physically handle the drugs, he was in complete control of

the drug transactions. The evidence proves that J.S., in contacting and selling drugs to Askins, was acting solely at the direction of [Carr]. At trial, the Commonwealth presented twenty-six audio recordings of portions of telephone conversations between [Carr] and J.S. which took place while [Carr] was incarcerated. Those recordings spanned thirteen days, covering April 17, 2017 , and April 30, 2017, and detailed the drug transactions that J.S. was to perform on [Carr's] behalf.

*Carr*, 227 A.3d at 20 (citation to record omitted). Thus, on January 21, 2020, we affirmed Carr's judgment of sentence.

Carr filed a timely *pro se* PCRA petition on January 14, 2021. The PCRA court appointed counsel, and PCRA counsel filed a supplemental PCRA petition. Carr testified at an evidentiary hearing held on April 22, 2021. Trial counsel testified at another evidentiary hearing held on June 21, 2021. On November 30, 2021, the PCRA court entered an opinion and order denying Carr's petition. PCRA counsel filed a timely appeal on Carr's behalf.

On appeal, this Court noted the following procedural history:

Two months later, Carr filed a *pro se* motion for appointment of new counsel in this Court, asserting his PCRA counsel was ineffective. PCRA counsel then filed a petition for leave to withdraw as counsel and requested a remand for appointment of alternative appellate counsel. PCRA counsel conceded that Carr has asserted claims of ineffective assistance against him, implicating our Supreme Court's holding in [***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021)]. Our Court deferred consideration of the petition to withdraw to the merits panel.

PCRA counsel subsequently filed a brief on Carr's behalf. The brief did not include any mention of the claims of PCRA counsel ineffectiveness.

A few days later, Carr filed a *pro se* application for relief with this Court, seeking new counsel not associated with PCRA counsel. Specifically, he asserted there was a conflict of interest with

- 3 -

current PCRA counsel since counsel had filed a motion to withdraw. This Court denied the application for relief based on counsel filing a brief on Carr's behalf.

A month later, Carr filed a *pro se* motion for application of enlargement of time to file a supplemental amended brief, in which Carr asserted the counseled brief was inadequate and that Carr had issues of arguable merit that counsel failed to include in the initial brief. This Court again denied relief based on counsel filing a brief on Carr's behalf.

*Commonwealth v. Carr*, 292 A.3d 1078 (Pa. Super. 2023) (non-precedential decision at 2-3).

This Court first discussed the circumstances surrounding Carr's claims of PCRA counsel's ineffectiveness. We noted that PCRA counsel could not raise his own ineffectiveness, "[n]or was Carr able to raise these claims with alternate counsel or *pro se*, *see Bradley*, 261 A.3d at 401, as this Court denied him alternate counsel, and denied him the ability to file a *pro se* supplement brief." *Id.* at 5. Thus, we vacated the order denying post-conviction relief and remanded the matter "for the PCRA court to appoint Carr new counsel to assist Carr in raising his claims that PCRA counsel was ineffective." *Id.* We also stated that our remand included "the opportunity for Carr to further develop these claims before the PCRA court and allow the court to rule on these claims in the first instance." *Id.* (citing *Bradley*, 261 A.3d at 402).

Following remand, the PCRA court appointed new counsel. After being granted a time extension, new counsel filed a supplemental PCRA petition on Carr's behalf in which counsel noted Carr's claim of ineffective assistance of

PCRA counsel for failing to raise a claim regarding Carr's desire to testify. New counsel noted, however, that a claim regarding Carr testifying was raised below and that the issue was discussed during the evidentiary hearings in this case.

On July 10, 2023, the PCRA court issued a Pa.R.A.P. 907 notice of its intent to dismiss Carr's petition without a hearing. Carr did not file a response. By order entered August 4, 2023, the PCRA court denied Carr's petition. This appeal followed. Both Carr and the PCRA court have complied with Pa.R.A.P. 1925.

Carr raises the following two issues on appeal:

The [PCRA] court in failing to rule that trial counsel was ineffective in failing to call [Carr] to the stand during his trial to testify on his own behalf.

Prior counsel erred in failing to properly develop the issue of whether the evidence presented at trial was sufficient to support a conviction, and thus this Court should rule on the merits of this issue.

Carr's Brief at 6.

This Court's standard of review for an order denying a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Webb*, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing *Commonwealth v. Barndt*, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

Carr's issues raise a claim regarding the alleged ineffectiveness of trial and appellate counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.*

The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

In his first issue, Carr asserts that trial counsel was ineffective for failing to call Carr to the stand to testify on his own behalf. According to Carr, he "desired to testify and asserts that this testimony would have assisted the jury in determining that he was not guilty of the crimes for which he was convicted." Carr's Brief at 17. Carr further noted that he "did request to be able to speak at this trial." *Id.*

As this Court has summarized:

> [T]he decision to testify on one's own behalf is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for failing to call the appellant to the stand, the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf. Counsel is not ineffective where counsel's decision to not call the defendant was reasonable.

**Commonwealth v. O'Bidos**, 849 A.2d 243, 250 (Pa. Super. 2004) (citation, quotation marks, and brackets omitted)

Here, the PCRA court found no merit to Carr's claim:

> The trial transcript and [Carr's] testimony at the PCRA hearing initially led support to his claim that he wanted to testify at trial (and for some inexplicable reason did not do so). Towards the conclusion of the trial, [the trial court] conducted a colloquy with [Carr] about whether or not he wanted to testify. [Carr] stated he wanted to testify, and the court recessed for lunch.

Immediately after resuming after the lunch break, the defense rested and the case proceeded to closing arguments. There is nothing on the trial record to indicate why [Carr] was not called to testify. Although [Carr] explained at the PCRA hearing that he did not publicly protest or state that he wanted to testify when his defense counsel rested because he had been previously admonished for an outburst during the proceedings, there is no indication that he made any attempt to call the issue to the attention of his counsel or the court, even in a respectful fashion, at that time or any subsequent time up through the filing of this PCRA [petition]. Moreover, [Carr] did not offer any testimony at the PCRA hearing at to what testimony he would have provided.

The court notes [trial counsel's] testimony that during the break after [Carr's] colloquy that [Carr] was again advised against testifying, and [Carr] apparently followed that advice. [Trial counsel] also testified that he rested at that point because he did not have any other witnesses or testimony to present.

Carr was not refused his right to testify, and the trial court made it clear to him that he could testify and the decision was entirely up to him.

PCRA Court Opinion, 11/30/21, at 6-7 (citations to record and excess capitalization omitted).

The PCRA court then reproduced the exchange that occurred between the trial court and Carr before the luncheon recess. The court then continued:

Trial counsel also testified at the PCRA hearing that he told [Carr] that the decision [to testify] was totally up to [Carr]. During the jury charge, [the trial court] properly instructed the jury that [Carr] did not testify, that the decision not to testify was entirely up to him, and that the decision not to testify was his absolute right and could not be held against him. Again, there is no indication in the Clerk of Court's file that [Carr] wrote to [the trial court] or [trial counsel] between the trial and sentencing to indicate that his right to testify had been violated. Additionally, [Carr] did not raise the issue of his inability to testify when he had an opportunity to speak at sentencing. Thus, the court finds that [Carr] was not refused the opportunity to testify, but apparently

changed his mind and chose not to. Accordingly, [Carr] is not entitled to relief on this issue.

*Id.* at 9. Our review of the record supports the PCRA court's conclusion.

Initially, we note that the trial transcripts do not appear in the electronic record sent to this Court. Although the PCRA court reproduced the colloquy before the luncheon recess for us, it appears that, following the recess, the trial court did not engage Carr in a further colloquy regarding his decision not to testify. Its absence, however, does not, in and of itself, mandate relief. *See Commonwealth v. Todd*, 820 A.2d 707, 712 (Pa. Super. 2003) (explaining that there is no express requirement that a trial court conduct a colloquy with regard to a defendant's right to testify).

Moreover, regarding credibility, the PCRA court believed trial counsel's version of the contested facts. We cannot disturb this determination. *See Commonwealth v. Harmon*, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal). Here, the PCRA court credited trial counsel's testimony that, once the proceedings resumed, Carr chose not to testify.

Finally, Carr cannot establish prejudice as he has not proffered on appeal specifically what testimony he would have provided that would have caused the jury to alter its verdict. *See Commonwealth v. Alderman*, 811 A.2d 592, 596 (Pa. Super. 2002) (concluding that the petitioner failed to establish that he was prejudiced by counsel's alleged failure to inform him about his

right to testify; "[w]ithout an offer of proof [the petitioner] has failed to demonstrate how his failure to testify resulted in a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different").

Thus, for these reasons, Carr's first ineffectiveness claim fails.

In his second issue, Carr argues that the PCRA court erred in failing to find that appellate counsel was ineffective for failing "to raise and preserve the sufficiency of evidence claim on direct appeal" because it was found waived for lack of specificity. According to Carr, "sufficient evidence was not presented at trial to provide a nexus between [Carr] providing drugs to his co-conspirator and then from the co-conspirator to the victim." Carr's Brief at 18.

We first discuss whether this claim is properly before us. As noted above, this Court previously remanded this matter so that new counsel could assist Carr in litigating his claims of PCRA counsel's ineffectiveness. In his petition filed after remand, Carr did not raise this issue as a layered claim of PCRA counsel's ineffectiveness. Rather, appellate counsel's ineffectiveness was raised for the first time in Carr's Rule 1925(b) statement. As such, it is waived. **See** Pa.R.A.P. 302(a) (providing that issues not raised before the lower court are waived and cannot be raised for the first time on appeal).[1]

_____

[1] We note that PCRA counsel actually raised the claim of appellate counsel's ineffectiveness in the supplemental petition he filed on Carr's behalf in
*(Footnote Continued Next Page)*

- 10 -

Additionally, as noted above, in his direct appeal, this Court addressed Carr's sufficiency challenge to the extent it was preserved. *See supra*. The fact that Carr now wishes to phrase his sufficiency challenge differently, such a challenge is arguably previously litigated under the PCRA. *See* 42 Pa.C.S.A. § 9544(a); *see also Commonwealth v. Towles*, 208 A.3d 988, 1005 (Pa. 2019) (explaining a claim is "previously litigated [under the PCRA] and not a proper subject for post-conviction relief," when, "despite the determination of waiver, [the Supreme] Court nevertheless engaged in a merits resolution of the underlying claim").

Moreover, the PCRA court rejected Carr's sufficiency challenge for much the same reasons this Court did in Carr's direct appeal. The PCRA court stated:

> [Carr] moved for a judgment of acquittal at the close of the Commonwealth's case, and the trial judge, who was in the best position to judge the sufficiency of the evidence, denied the motion. Additionally, the court notes that [J.S.] testified at length about how [Carr] directed her as to where to procure the drugs for sale, how to sell them, that the victim had contacted [J.S.] around the time in question desperate to obtain heroin, and that [J.S.] delivered [Carr's] drugs to the victim shortly before the victim's overdose and subsequent death. Dr. Eric Vey, an expert in forensic pathology, testified that the victim's cause of death was fentanyl toxicity. Dr. Vey further testified that, given the victim's levels of fentanyl at the time of her death and the nature of fentanyl and how it is metabolized by the body, the victim died shortly after ingesting the fentanyl. This

February of 2021. The PCRA court considered and rejected this claim. *See infra*.

evidence was sufficient to establish a connection between [Carr's] drugs that were delivered to the victim shortly before her overdose and death. Thus, [Carr] is not entitled to relief on this issue.

PCRA Court Opinion, 11/30/21, at 10 (citations to record and excess capitalization omitted).

Alternatively, in this appeal, Carr argues that the Commonwealth failed to establish a nexus between his conduct and the victim's death because the drugs supplied by J.S., as directed by Carr, were not the drugs that killed her. *See* Carr's Brief at 26-31. The PCRA court found no merit to this claim:

[Carr] also argues that the evidence was insufficient to prove that the fentanyl was the cause of the victim's death because there were other controlled substances in the victim's system at the time of her death. Dr. Vey testified as an expert in forensic pathology. He testified that the victim's fentanyl levels at the time of her death were 11 times a lethal dose. Dr. Vey also testified there were other chemical substances in the victim's system at the time of her death, including alprazolam (essentially Xanax), benzoylecgonine (an inactive breakdown product of cocaine), trazodone (at a level associated with therapeutic usage as would be prescribed by a doctor), and Naloxone/Narcan (an antidote for opioids). Dr. Vey testified that the other substances found in her blood were either inactive metabolites or were at minimum levels which did not contribute to the victim's death. Dr. Vey concluded that the victim's death was caused by ingestion of a lethal dose of fentanyl. This evidence was sufficient to establish that the fentanyl, and not the other chemical substances, in the victim's blood, was the cause of the victim's overdose and death. Thus, [Carr] is not entitled to relief on this issue.

PCRA Court Opinion, 11/30/21, at 10-11 (citations to record and excess capitalization omitted).

- 12 -

Carr provides no basis to disturb the PCRA court's conclusion. He merely asserts that, because Dr. Vey testified ["t]here was no heroin or heroin metabolites present" in the victim's blood at the time of her death, "heroin laced with fentanyl could not have been the cause been the cause of her death." Carr's Brief at 29 (citing **U.S. v. Ewing**, 749 F.App'x 317 (6th Circ. August 31, 2018)). Here, Carr was charged with, and convicted of, the delivery of fentanyl resulting in death. **See supra**. As the expert testimony supports this conviction, Carr's claim fails.

In sum, neither of Carr's ineffective assistance of counsel claims warrant post-conviction relief. We therefore affirm the PCRA court's order denying his petition.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

5/22/2024